**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION**

| | | |
|---|---|---|
| **KENNETH P. MAJKUT,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 1:05-CV-0068-C |
| | § | ECF |
| | § | Referred to the U.S. Magistrate Judge |
| **JO ANNE B. BARNHART,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**

**THIS MATTER** is before the court upon Plaintiff's complaint filed April 13, 2005, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's applications for a period of disability and disability insurance benefits and for supplemental security income benefits under Title II and Title XVI of the Social Security Act. Plaintiff filed a brief in support of his complaint on September 14, 2005, and Defendant filed her brief and an appendix in support of her brief on October 14, 2005. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this matter to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. This court, having considered the pleadings, the briefs, and the administrative record, recommends that the United States District Judge reverse the Commissioner's decision and remand this matter for further administrative proceedings.

## I.   STATEMENT OF THE CASE

Plaintiff filed applications for a period of disability and disability insurance benefits and for supplemental security income benefits on October 9, 1995, with a protective filing date of September 7, 1995, for his SSI application, alleging disability beginning March 1, 1987. Tr. 41, 54-57.[1]  Plaintiff's applications were denied initially and upon reconsideration.  Tr. 59-62; 68-70. Plaintiff filed a Request for Hearing by Administrative Law Judge on August 2, 2000, and this matter came for hearing before the Administrative Law Judge ("ALJ") on November 14, 2001. Tr. 41, 72, 451-81.  Plaintiff, represented by a non-attorney, testified in his own behalf.  Tr. 456-76. Deborah Buckingham, a vocational expert ("VE"), appeared and testified as well.  Tr. 476-80.  The ALJ issued a decision unfavorable to Plaintiff on December 21, 2001.  Tr. 38-50.

In his opinion the ALJ noted that the central issue was whether Plaintiff was under a disability within the meaning of the Social Security Act.  Tr. 41.  He found that Plaintiff met the disability insured status requirements through his amended onset date of June 30, 1994.  Tr. 42.  He noted that for entitlement to Title II benefits, a claimant's disability must be shown to have begun on or prior to that date.  *Id.*  The ALJ further found that Plaintiff had not engaged in substantial gainful activity at any time since June 30, 1994.  *Id.*  He found that Plaintiff has a "severe" impairment of bipolar disorder, most recent episode manic, severe, with psychotic features.  *Id.*  The ALJ noted that in determining whether Plaintiff's impairment(s) were "severe," he was required to consider any symptoms that are reasonably related to an individual's medically determinable impairments, citing  20 C.F.R. §§ 404.1521, 404.1529, 416.921 and 416.929.  *Id.*  He noted that Plaintiff's mental impairment of bipolar disorder was severe in that his symptoms are reasonably related to his medically determinable impairment, and such impairment has more than a minimal

---

[1]     The disability onset date was later amended to June 30, 1994.  Tr. 41-42.

effect on the claimant's ability to perform basic work related activities, citing *Bowen v. Yuckert*, 482 U.S. 137 (1987) and *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1998).  He further found that Plaintiff's severe impairment was not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App.1.  *Id.*  He indicated that he considered the opinions of the state agency medical consultants who had evaluated this matter. *Id.* The ALJ found that Plaintiff had medically determinable impairments capable of producing the subjective complaints expressed.  Tr. 46.  He indicated that he considered Plaintiff's subjective complaints in assessing his residual functional capacity for work and evaluated his complaints in accordance with 20 C.F.R. §§ 404.1529 and 416.929 and Social Security Ruling 96-7p (July 2, 1996)("SSR 96-7p"). *Id.* He indicated that he concurred with the state agency medical consultants insofar as they opined that Plaintiff's severe impairment did not meet or equal in severity any listed impairment in the Listing of Impairments.  Tr. 42.  He also indicated his agreement with their opinion that Plaintiff retained the ability to work at the medium exertional level.  *Id*.

The ALJ found that there was "very little medical evidence" to support the contention that Plaintiff was disabled since June 30, 1994.  *Id*.  He noted Plaintiff's history of back pain, muscle spasms, and muscle sprain.  Tr. 43.  He contrasted such complaints with Plaintiff's report of walking for exercise, upon the advice of his physicians.  *Id*.

The ALJ noted that the record established that Plaintiff had a "long history of somatization with regard to his physical symptoms" and noted the lack of objective evidence to establish any etiology.  *Id*.  He also noted Plaintiff's "obsession with his rectum and rectal function."  *Id*.

The ALJ  turned to the evidence  regarding Plaintiff's physical complaints.  *Id*.  He noted that Plaintiff underwent a consultative internal medicine examination in May 2000 by Gunnam Ramachandran, M.D., wherein Plaintiff complained of low back and lower extremity pain, reflux symptoms, and prostate problems.  *Id.*  He noted Dr. Ramachandran's report that Plaintiff was

oriented but very restless and nervous. *Id.* He noted the findings on physical examination, as well as the consultative examiner's diagnostic impression of low back pain of unknown etiology; gastroesophageal reflux disease; anxiety; and possible schizoaffective disorder. *Id.*

The ALJ opined that Plaintiff's history of mental illness was of more significance. Tr. 43. He noted Plaintiff's treatment by his family practice provider, Laura Barber, M.D., and his referral to Abilene Mental Health - Mental Retardation ("MHMR") for treatment. *Id.* He noted that upon intake, the MHMR records revealed that Plaintiff was anxious and had occasional delusions, occasional rapid speech, and tangential thinking, and that Plaintiff was taking no medication at that time. *Id.* He noted that in August 1995, an MHMR staff psychiatrist, Dr. Solano, indicated that Plaintiff was anxious; sometimes stared blankly; was dysphoric with blunted and anxious affect, although cooperative, alert, and coherent; and expressed multiple somatic complaints. *Id.* Dr. Solano's diagnostic impression was depressive disorder NOS; anxiety disorder; and somatization disorder. Tr. 44. Dr. Solano also indicated that several conditions should be ruled out, including obsessive compulsive disorder, psychotic disorder NOS, personality disorder NOS, and dependent personality with schizotypal traits. *Id.* The ALJ noted Dr. Solano's opinion of a Global Assessment of Functioning ("GAF")[2] score on Axis V[3] of 40.[4]

---

[2] The GAF score on Axis V is for reporting the client's "psychological, social, and occupational functioning." *See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32 ("DSM-IV"). This report of overall functioning is noted to be "useful in planning treatment and measuring its impact, and in predicting outcome." *Id*.

[3] The axial system of evaluation enables the clinician to comprehensively and systematically evaluate a client. *See generally, American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 25-30.

[4] A GAF score of 31 to 40 indicates some "impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood."   *See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.

The ALJ also discussed Plaintiff's further treatment at MHMR. *Id.* He noted Plaintiff's November 1998 diagnosis of panic disorder; obsessive compulsive disorder; somatization disorder; and dependent personality disorder, as well as a GAF of 45.[5] *Id.*

The ALJ discussed the consultative psychiatric examination by Duane Miller, M.D., in May of 2000. He noted Dr. Miller's report of Plaintiff's rapid speech, hypomanic activity, inability to stay on one subject or topic, with poor insight and judgment. *Id.* He noted Dr. Miller's opinion that it was doubtful that Plaintiff could make good decisions on occupational, personal, and social adjustments; that his presentation would likely cause others to be avoidant; that he was not stable, and that his current medication was not of significant help. *Id.* He also noted Dr. Miller's diagnosis, including a GAF of 55[6] and a guarded prognosis. *Id.*

The ALJ noted that Plaintiff's condition continued to deteriorate, culminating in admission to the Big Spring State Hospital from May until June 2000 for inpatient mental health treatment. Tr. 44. Plaintiff's GAF score at intake was 25.[7] Tr. 44-45. He noted that upon such treatment,

---

[5] A GAF of 41 to 50 indicates "serious symptoms" or "any serious impairment in social, occupational, or school functioning. *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.

[6] The DSM-IV defines a GAF score of 51-60 as moderate symptoms (e.g. flat effect, circumstantial speech, and occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers). *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.

[7] The DSM-IV defines a GAF rating within the range 21-30 as describing someone whose "behavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) or inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends). *Id.* at 32.

Plaintiff improved dramatically. Tr. 45. At the time of discharge, he was stable with no signs of psychosis and his GAF score had risen to 65.[8] *Id.*

The ALJ opined that Plaintiff's MHMR records from June 2000 indicated that Plaintiff has had fairly good results from his medication, without side effects, alleviating his symptoms and allowing for a fair remission. *Id.* He noted that in June 2001, Plaintiff's counselor, Steve Queen, LPC, opined that Plaintiff's bipolar disorder, significant anxiety, and obsessive compulsive symptoms resulted in a fairly poor prognosis, as well as his opinion that Plaintiff's emotional and mental difficulties were debilitating and prevented him from holding down any significant employment. *Id.* He also noted that Mr. Queen's August 2001 mental residual functional capacity assessment indicated that Plaintiff was at a less than sedentary level of functioning, with an extremely limited ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, to perform at a consistent pace without an unreasonable number and length of rest periods, to perform activities within a schedule, to maintain regular attendance, and to be punctual. Tr. 45-46. The ALJ noted Mr. Queen's opinion that Plaintiff could not maintain a regular schedule due to anxiety and stress, had difficulty following simple instructions, and had paranoid fears regarding social situations and people, with a poor prognosis. Tr. 46. He also noted that Mr. Queen indicated in a November 2001 letter that Plaintiff continued to struggle and deteriorated in September and October 2001. *Id.*

The ALJ found that Plaintiff's objectively identifiable, medically determinable impairment could reasonably be expected to produce the symptoms he alleges. Tr. 46. He also found that Plaintiff's allegations regarding his subjective complaints and functional limitations were not

---

[8] The DSM-IV defines a GAF of 61-70 as some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning, but generally functioning pretty well. *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.

reasonably supported by the findings of the objective medical evidence or inferences therefrom and were not entirely credible, to the extent that he alleged the inability to engage in any work activity since June 30, 1994. *Id.* In conjunction with his credibility finding, the ALJ noted that Plaintiff "has attended MHMR only sporadically," which he said was "an indication that [Plaintiff] does not think his condition is serious." Tr. 47. He also opined that MHMR records and Dr. Miller's psychiatric consultative examination indicated that Plaintiff had adequate concentration, has been stable and in partial remission, and his mental status examinations have been unremarkable. *Id.* The ALJ also found that Mr. Queen's opinions and assessments were not supported by the medical record and, therefore, did not accord them significant or probative weight. *Id.*

The ALJ discussed Plaintiff's testimony regarding his symptoms and the limitations imposed by his impairment. *Id.* He noted Plaintiff's report that he could walk 20 or 30 minutes, that he cared for his own personal hygiene, that he has difficulty with concentrating and the ability to stay on task for 20 minutes, that he gets upset when he drops things, and that he becomes angry and depressed. Tr. 47. He also noted Plaintiff's report of going to the store once or twice a week, having two friends, feeling comfortable with his wife for only a few hours, sometimes attending church, playing dart baseball with ten people, having rituals at home, and pacing. *Id.* He also noted that Plaintiff stood throughout the hearing and during many of his MHMR sessions. *Id.* The ALJ also noted Plaintiff's report of paranoid and suicidal thoughts. *Id.*

The ALJ ultimately concluded that Plaintiff retained the physical residual functional capacity for a limited range of activity at the medium exertional level. Tr. 47, 48. He found that Plaintiff's mental illness required that Plaintiff avoid more complex and detailed job instructions and that he have limited contact with the public and with co-workers. Tr. 47. He thus found that Plaintiff's ability to perform medium level work was limited to jobs with a reasoning level of one, two, or three

as defined in the *Dictionary of Occupational Titles*[9] and by the need to have only superficial contact with the public and coworkers. Tr. 48. He found that Plaintiff was unable to perform any of his past relevant work. *Id*.

The ALJ noted that considering Plaintiff's age, the issue of transferable work skills was immaterial. Tr. 49. He noted that if Plaintiff could perform a full range of medium level work activities, application of the Medical-Vocational Guidelines set forth in 20 C.F.R. Part 404, Subpt. P, App. 2 ("the Grids") would direct a finding of not disabled. *Id.* However, having found that Plaintiff could not perform the full range of medium work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite his severe impairment. Tr. 49. The ALJ relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in the national economy, including the jobs of marker/merchandise tagger, with 2,000 jobs in Texas and 23,000 nationally; housekeeper, with 50,000 jobs in Texas and 500,000 nationally; and store laborer, with 14,000 jobs in Texas and 200,000 nationally. *Id*. He therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 49-50.

Plaintiff submitted a Request for Review of Hearing Decision/Order on February 21, 2002. Tr. 24. The Appeals Council issued its first opinion on June 19, 2002, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision and denied Plaintiff's request. Tr. 21-23. On June 27, 2002, Plaintiff's representative notified the Appeals Council that its opinion had indicated that Plaintiff was denied under the musculoskeltal Listing, although his only impairment was a

---

[9] United States Dept. of Labor, Employment & Training Admin., *Dictionary of Occupational Titles* (4th ed. 1991)("DOT").

mental, nonexertional impairment and asked that the appeal be reopened. Tr. 14-20. The Appeal Council set aside its previous denial of Plaintiff's request for review on February 18, 2005, indicated that it had considered the additional information set forth in Plaintiff's brief, and again denied Plaintiff's request. Tr. 5-8. The ALJ's decision, therefore, became the final decision of the Commissioner.

On April 13, 2005, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.   STANDARD OF REVIEW

An individual may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g).  The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)(citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).  The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity.  Substantial gainful activity is defined as work activity involving significant physical or

mental abilities for pay or profit. *Newton,* 209 F.3d at 452. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453.  In this case, the ALJ found at step 5 that Plaintiff was not disabled because he retained the ability to perform work in the national economy.  Tr. 49.

## III.   DISCUSSION

Plaintiff claims that the ALJ's decision is not supported by substantial evidence because the ALJ erred in determining his RFC by failing to find that his somatization disorder was "severe" at step 2; by failing to properly consider the report and opinions of the treating physicians with regard to Plaintiff's impairments and the limitations imposed therein; and by failing to consider the combination of Plaintiff's impairments.  Plaintiff further claims that the ALJ erred by relying upon testimony of the VE based on a hypothetical question which did not include all the limitations established by the record.  Plaintiff also alleges that the ALJ erred by failing to find that his mental impairment meets the requirements of Section 12.04 of the Listing of Impairments, thereby demonstrating presumptive disability, and by failing to determine whether he could maintain employment.

**A.     Whether the ALJ's determination of Plaintiff's RFC is supported by substantial evidence.**

Plaintiff alleges that the ALJ erred in determining his RFC in several respects.  The ultimate issue is whether the ALJ's decision is supported by substantial evidence.  The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

### 1. Whether the ALJ erred in finding that Plaintiff's somatization disorder was not "severe"

In his opinion, the ALJ found that Plaintiff only had one "severe" mental impairment – his bipolar disorder. Tr. 42. He specifically found that Plaintiff "has a long history of somatization with regard to his physical symptoms," including an obsession with his rectum and rectal function. Tr. 43. He also noted the record indicating Plaintiff's report of somatic complaints and his diagnosis of somatization disorder but did not find that this disorder was "severe." Tr. 43-44. The ALJ therefore implicitly found that this impairment was not "severe."

Under the Social Security Regulations, the severity of an impairment or impairments is considered at the second step of the five-step sequential analysis. *See* 20 C.F.R. § 404.1520. A claimant must show that he or she has a severe medical impairment before the claimant can be determined disabled. 20 C.F.R. § 404.1520(a)(4)(ii). The regulations further provide that an impairment must significantly limit the person's ability to do basic work activities in order to be considered severe. 20 C.F.R. § 404.1520(c). Thus,

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, [the Commissioner] will find that you do not have a severe impairment and are, therefore, not disabled.

*Id.*

The Supreme Court held that this "severity regulation" is valid on its face and "is not inconsistent with the statutory definition of disability." *Bowen v. Yuckert,* 482 U.S. 137, 146, 154, 107 S.Ct. 2287, 2293, 2298 (1987).

The Fifth Circuit has considered the severity regulation, both before and after the Supreme Court's decision in *Bowen v. Yuckert*. In *Stone*, 752 F.2d 1099, the Court approved of an earlier construction of the severity regulation that set this standard for determining whether a claimant's impairment is severe:

[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.

*Id.* at 1101 (quoting *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984). In *Loza v. Apfel*, the Court held that the standard set forth in *Stone* remained the correct standard. *Loza,* 219 F.3d at 392. However, the Commissioner may require a claimant to make a *de minimis* showing that his or her impairment is severe enough to interfere with the ability to do work under this standard. *Anthony v. Sullivan*, 954 F.2d 289, 293 n.5 (5th Cir. 1992).

The Court in *Stone* specifically required that ALJs and Appeals Councils must set forth the correct standard in their decisions by reference to the *Stone* opinion or to another opinion of the same effect or by including an express statement in the decision that the construction given to the severity regulation is the construction given to it in *Stone*. Failure to do so will result in the court's assumption that the ALJ or Appeals Council has applied an incorrect standard. *Stone,* 752 F.2d at 1106. Moreover, the claimant need only make a *de minimis* showing that his impairment is severe enough to interfere with his ability to do work to satisfy this standard. *Anthony*, 954 F.2d at 294.

Here, the ALJ did find that Plaintiff had a medically determinable impairment, his bipolar disorder, and, although he mentioned the somatization disorder, he did not find this impairment was "severe" nor did he find that the somatization disorder imposed any limitations.

The record contains numerous notations from various sources regarding Plaintiff's somatization disorder and his obsession with his rectum and rectal functioning. Plaintiff's report of somatic complaints, including constipation, diarrhea, abdominal pain, and urological problems, were noted on August 28, 1995. Tr. 277. Dr. Barber indicated a diagnosis of somatization by history on May 24, 2000. Tr. 138. Terry C. Johnson, M.D., noted on October 2, 1995, that Plaintiff has a "tremendous amount of fixation" on his rectum, rectal sphincter, inguinal area, and prostate. Tr. 172. A treatment provider at the Presbyterian Medical center noted on February 9, 1995, that

-12-

Plaintiff has a psychotic fixation with his rectum. Tr. 185. Plaintiff's chronic inappropriate use of Proctofoam was also noted. Tr. 183. Jose D. Guerra, M.D., noted that Plaintiff was "not all there," had an obsession with his rectum, and reported pain which was not reproducible with pressure. Tr. 189. He also noted that Plaintiff has had a fixation with his rectum for years and took an "inordinate" number of enemas, giving himself an enema every day. Tr. 192-93. Plaintiff testified that he had to "stand up to go for a bowel movement" and indicated that he spent "a couple of hours" daily dealing with this issue. Tr. 463. He testified that his stomach problems sometimes bothered him all day long. Tr. 468. He also testified that he gave himself an enema with every bowel movement and also "pulls [his] feces out with a latex gloves on [sic]." Tr. 475.

The ALJ did not ascribe any limitations imposed by Plaintiff's somatization disorder, including Plaintiff's unique toileting issues. Defendant argues that the medical record revealed no evidence that Plaintiff had any other impairment which constituted a "severe" impairment. The claimant has the burden to prove that he is disabled within the meaning of the Social Security Act. *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir.1987). A physical or mental impairment is in turn defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The existence of an impairment does not in itself establish disability; a claimant is disabled only if he or she is "incapable of engaging in any substantial gainful activity." *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir.1986). A severe impairment is one which "significantly limits" the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). In the Fifth Circuit, "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1101. The claimant need only make a *de minimis* showing

that her impairment is severe enough to interfere with her ability to do work. *Anthony*, 954 F.2d at 294. The record indicates that Plaintiff has clearly met the *de minimis* showing required for a finding that his somatization disorder and obsession with his rectum significantly limits his physical or mental ability to do basic work activities and thus constitutes a severe impairment. *See* 20 C.F.R. §§ 404.1520©, 416.920(c). The evidence in the record indicates that Plaintiff's preoccupation with his rectal functioning required a minimum of two hours per day to deal with. Plaintiff's subjective complaints are supported by the notations of numerous care providers, who indicated that he had an obsession with his rectum, inappropriately used Proctofoam, and gave himself enemas daily. Plaintiff testified that he had to stand up with every bowel movement, gave himself an enema with each bowel movement, and would physically remove feces from his body while wearing latex gloves. The evidence meets the *de minimis* standard for showing that an impairment is "severe." Without adequate consideration of such impairment, the ALJ failed to address whether such impairment imposed any limitations upon Plaintiff, nor were any such limitations incorporated into the RFC finding or the hypothetical posed to the VE.

I find that the ALJ erred at step 2 of the sequential evaluation process in finding that Plaintiff's somatization disorder, including his preoccupation with his rectum, was not a "severe" impairment within the meaning of the regulations and *Stone*. In doing so, the ALJ necessarily failed to appropriately consider the combination of Plaintiff's impairments in determining his RFC.

Plaintiff also alleges that the ALJ erred by failing to properly consider the reports and opinions of his treating physicians. The ALJ found that Plaintiff's mental impairment had mildly restricted his activities of daily living, created moderate difficulties in concentration, and resulted in one episode of decompensation of extended duration. Tr. 46. In making his credibility finding, the ALJ noted that Plaintiff had attended MHMR only "sporadically" (although this was, at least in part, because of his discharge for no longer being a part of the target population) and referred to the

records indicating that he was stable and in partial remission. The ALJ also specifically discounted the opinions of Mr. Queen, Plaintiff's counselor.

Clearly, questions of credibility are the responsibility of the ALJ to resolve. *Masterson*, 309 F.3d at 272. The task of weighing the evidence is the province of the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The relative weight to be given to these pieces of evidence is within the ALJ's discretion. *Id.* The ALJ relied primarily upon the opinions of Dr. Gordon Abbo, one of Plaintiff's treatment providers at MHMR. However, even the MHMR treatment providers varied greatly in their evaluation of Plaintiff's condition. On September 17, 2001, Dr. Abbo indicated that Plaintiff was still doing fair, was in fair remission, had difficulty concentrating, had abnormal thought content, and indicated the presence of suicidal thoughts. Tr. 428-428A. Just three days later, another MHMR staff member indicated that Plaintiff had poor judgment, poor impulse, and poor insight; was hearing voices at times; had paranoid ideation, and had impairment of memory and concentration. Tr. 430. On October 10, 2001, a staff member noted Plaintiff's report that hallucinations decreased but were still present "once in a while," paranoid ideation, and impaired memory and concentration, although Plaintiff's symptoms were still "managed fairly well." Tr. 431-32. In contrast, Mr. Queen submitted several detailed letters indicating Plaintiff's struggles with anxiety and obsessive compulsive symptoms and his poor prognosis, "even with active treatment." Tr. 396. Mr. Queen also supported his mental residual functional capacity opinions with notations indicating Plaintiff's difficulty with remembering instructions, his debilitating nervousness around others, and that he bordered on paranoia in his dealings with other people. Tr. 400. Mr. Queen also described Plaintiff's deterioration in September 2001. Tr. 438. Dr. Miller, the psychiatric consultative examiner, opined that Plaintiff would not likely have much social functioning and that Plaintiff "[did] not appear to be stable" at that time. Tr. 319-20. He also opined that Plaintiff's prognosis was guarded. Tr. 320.

Mr. Queen's opinion as a "medical source," rather than a treating physician, is accorded less weight under the applicable regulations. *See* 20 C.F.R. § 404.1513(e); *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991). However, there is substantial evidence of record indicating that Plaintiff's mental condition was, in fact, not stable and imposed greater limitations than those accepted by the ALJ. The only limitations that the ALJ incorporated into his RFC assessment were a restriction to work requiring a reasoning level of no more than one, two, or three and the need to have only superficial contact with coworkers and the public. Given that the ALJ failed to appropriately consider the severity of Plaintiff's somatization disorder at step 2 and failed to indicate what limitations were imposed by this disorder, the court is unable to find that the RFC assessment was supported by substantial evidence in the record. Remand is required to allow the ALJ to appropriately evaluate the severity of Plaintiff's impairments, to determine the limitations imposed by the combination of Plaintiff's impairments, and for a determination of Plaintiff's residual functional capacity. Upon remand, further consideration of the evidence in the record as to the limitations imposed by Plaintiff's impairments is necessary.

Because the RFC finding is not supported by substantial evidence, the hypothetical posed to the VE is similarly flawed. The ALJ is not required to incorporate limitations into the hypothetical questions presented to the VE that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). The hypothetical presented to the VE need only reasonably incorporate the limitations accepted by the ALJ. *See Bowling v. Shalala*, 36 F.3d 431, 435-36 (no reversible error where the hypothetical presented reasonably incorporated the limitations accepted by the ALJ and claimant's representative had the opportunity to present questions incorporating additional limitations). Upon remand and after determining Plaintiff's RFC, the ALJ will have the opportunity to present a hypothetical question to the VE which incorporates limitations which are accepted by the ALJ and which reflect the RFC finding.

Further, having found that the ALJ erred at step 2, upon remand, the ALJ will need to again consider whether Plaintiff's impairments meet or equal in severity any listing in the Listing of Impairments. For this reason, the court does not address Plaintiff's argument that the ALJ erred by failing to find that he met Sections 12.04 or 12.07 in the Listing of Impairments.

Finally, Plaintiff alleges that the ALJ failed to consider whether he could maintain employment. Upon remand, if appropriate, the ALJ may consider this issue.

## IV.   CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States District Judge reverse the Commissioner's decision and remand this matter for further administrative proceedings in accordance with this opinion.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 11 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within 11 days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

-18-

DATED this 4th day of August, 2006.

_____
**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**